2026 IL App (1st) 240361-U

No. 1-24-0361

Order filed August 7, 2026

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CR 02230 |
| | ) | |
| MICHAEL RIDDLE, | ) | Honorable |
| | ) | James Bryan Novy, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Evidence at trial was sufficient to establish defendant's guilt beyond a reasonable doubt of unlawful restraint.

¶ 2   The State charged defendant Michael Riddle with attempted aggravated vehicular hijacking (720 ILCS 5/8-4, 18-4(a)(3) (West 2020)) (count I) and aggravated robbery (id. § 18-1(b)(1)) (count II), arising from a December 7, 2020, incident. Following a bench trial, Riddle was convicted of the lesser included offense of unlawful restraint and sentenced to three years'

imprisonment. On appeal, Riddle challenges the sufficiency of the evidence that he restrained the victim. We affirm.

¶ 3     At trial, Ashley Coleman testified that, on December 7, 2020, she drove her SUV to a gas station at 31st Street and Michigan Avenue. She parked with the driver's side facing a gas pump, exited, and entered the gas station to pay for gas. Afterwards, she walked around the back of her vehicle and opened the driver's side door to unlock the gas tank. When she turned to open the gas tank, she saw a man standing behind her. Coleman identified Riddle as that man.

¶ 4     Riddle ordered Coleman to drop her keys. He then reached inside his jacket pocket and added, "drop your keys on the floor before I shoot you," and "I'm fixing to shoot you." Believing that Riddle had a firearm, Coleman fled and dropped her keys on the ground. As she fled, she felt "scared" and unsure whether to back away from Riddle or turn her back to him. She explained, "why would I turn around if somebody just said they was going to shoot me?" but also thought, "don't let him shoot you in the back of your head so turn around."

¶ 5     Riddle retrieved Coleman's keys and walked to the driver's side of the SUV. He paused by the door, as if about to enter the vehicle. Instead, he dropped Coleman's keys on the ground, walked behind a "see-through" gate, and stood there. Coleman retrieved her keys, called the police, pumped gas, and left. Shortly after, police called Coleman and asked her to return to the gas station. Officers placed her in a squad vehicle and drove her past an area where Riddle had been detained. Coleman identified Riddle as the individual who confronted her at the gas station.

¶ 6     The State published surveillance footage from the gas station. Relevant here, the footage shows a man, whom Coleman identified at trial as Riddle, walking around the gas station parking lot. Around 3 p.m. on the timestamp, Riddle stands near the gas station's front doors. A SUV parks

at a pump, and Riddle walks toward it. He then changes course and walks to a gas pump to the left. Roughly 90 seconds later, Coleman exits the SUV and enters the gas station. Afterwards, she walks around the rear of the SUV to the driver's side. At about the same time, Riddle leaves his position at a nearby pump and walks toward the rear of the SUV with his hands in his pockets. As Coleman opens the front driver's side door and reaches inside, Riddle approaches. He briefly pauses near the rear driver's side door as Coleman turns toward him, with the open driver's side door behind her.

¶ 7   Coleman quickly closes the driver's side door and rushes around the front of the SUV, looking over her shoulder at Riddle. Riddle follows with his right hand either in his front pocket or in the front of his waistband. Coleman drops something behind her. She runs to the gas station entrance and remains there while Riddle retrieves something from the ground. Riddle then walks around the front of the SUV toward the driver's side. Coleman turns and takes a few steps toward her vehicle. Riddle turns to face her as he nears the driver's side front tire. The SUV's lights flash, and Riddle again reaches in or near his pockets. Coleman quickly reverses direction, rushing toward the gas station entrance and opening the door as Riddle walks away. Coleman does not enter the gas station but turns back toward her vehicle.

¶ 8   Coleman testified that she did not give Riddle permission to take her keys or her vehicle. She dropped her keys because she believed he may have possessed a firearm. On cross-examination, Coleman testified that she left the gas station before police arrived because Riddle "was still there," "pacing." She initially did not comprehend the situation when Riddle first demanded that she "put her keys on the floor." Riddle then repeated his demand "again and again." At one point, he was "right up on [her]," though he never touched her.

¶ 9 Chicago police officer Julio Zavala testified that he and his partner responded to a call of a robbery in progress at the gas station and detained Riddle, who matched the offender's description. When officers drove Coleman to the area where Riddle was detained, Zavala was notified "over the radio" that Coleman positively identified him.

¶ 10 During closing arguments, the court questioned both parties about Riddle's apparent "change of heart," noting that he retrieved the keys from the ground and later dropped them, abandoning his attempt to take the vehicle. The court then conducted an in-chambers discussion. When proceedings resumed on the record, the court separately asked defense counsel and Riddle whether they were "asking [the court] to consider the Class 4 offense of unlawful restraint as a less[e]r included offense." They responded, "Yes."

¶ 11 The court found Riddle guilty of unlawful restraint, reasoning that he intended "to take someone's vehicle by threatening force" and secured the keys before "his mental state changed." Nevertheless, the encounter with Coleman was "criminal in nature" and the "less[e]r included offense of unlawful restraint lies in this case." The court acquitted Riddle of attempted aggravated vehicular hijacking and aggravated robbery.

¶ 12 In his motion for new trial, which he later supplemented, Riddle contended that the State failed to prove every element of the offense beyond a reasonable doubt. The trial court denied the motion and sentenced him to three years' imprisonment. On appeal, Riddle argues that the evidence did not show that he restrained Coleman's movement. Rather, he contends, the surveillance video showed that she could, and did, walk away from him.

¶ 13 When reviewing a challenge to the sufficiency of the evidence, we determine whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt. *People v. Cline*, 2022 IL 126383, ¶ 25. We will not retry the defendant or substitute our judgment for that of the trier of fact, "who is charged with assessing the credibility of the witnesses and the weight to be accorded their testimony, resolving conflicts in the evidence, and drawing reasonable inferences therefrom." *People v. Padilla,* 2021 IL App (1st) 171632, ¶ 42. Rather, we allow all reasonable inferences from the record in favor of the State. *Cline*, 2022 IL 126383, ¶ 25. We reverse only if the evidence is so unsatisfactory as to raise a reasonable doubt of defendant's guilt. *Id*.

¶ 14      Riddle was charged with attempted aggravated vehicular hijacking and aggravated robbery. He was found guilty of unlawful restraint, a lesser-included offense of aggravated robbery. *People v. Lucious,* 2016 IL App (1st) 141127, ¶¶ 57-58. "A person commits the offense of unlawful restraint when he or she knowingly without legal authority detains another." 720 ILCS 5/10-3 (West 2020). "To 'detain another' is commonly understood to mean causing a restriction of another's freedom to move about." *People v. Wisslead*, 108 Ill. 2d 389, 398 (1985); *People v. Daniel,* 2014 IL App (1st) 121171, ¶ 50 (stating that the "key concern for unlawful restraint" is whether a person's "freedom of locomotion" was impaired). In other words, "[t]he gist of unlawful restraint is the detention of a person by some conduct which prevents [her] from moving from one place to another." *People v. Black,* 2012 IL App (1st) 101817, ¶ 21. Physical force is not required. *People v. Kittle,* 140 Ill. App. 3d 951, 956 (1986).

¶ 15      Thus, the question here is whether Riddle knowingly restricted Coleman's ability to move freely even without any touching or physical force. It is not, as Riddle frames the issue, whether Coleman could distance herself or whether he touched or placed his hands on her. Viewing the

record in the light most favorable to the State, we find the evidence sufficient to show that Riddle knowingly restricted Coleman's ability to move from one place to another.

¶ 16    The trial evidence showed that Riddle restricted Coleman's access to her vehicle. He stopped her near her SUV, prevented her from pumping gas, demanded that she drop her keys, and intimated that he possessed a firearm. His conduct caused Coleman to flee and drop her keys rather than remain by her vehicle to pump gas. It also frightened Coleman, such that she was uncertain how to flee, fearing that she would be shot either in the face or in the back of the head. When Coleman again tried to approach her vehicle, Riddle's conduct again caused her to back away. Coleman remained near the gas station entrance rather than walking toward her SUV. Her actions are not those of someone enjoying unrestricted freedom of locomotion. See *People v. Lee*, 376 Ill. App. 3d 951, 958 (2007) (finding that victim was restrained when defendant demanded money from victim's parents, and victim fled to the sidewalk and watched defendant from afar).

¶ 17    Accordingly, any rational factfinder could have determined that Riddle knowingly and without legal authority detained Coleman when he approached her at the gas station, intimated that he possessed a firearm, demanded that she drop her keys, and threatened to shoot her if she did not comply.

¶ 18    For the foregoing reasons, we affirm the circuit court's judgment.

¶ 19    Affirmed.